**DAVID S. RATNER (SBN 316267)**
**SHELLEY A. MOLINEAUX (SBN 277884)**
**RATNER MOLINEAUX, LLP**
1990 N. California Blvd., Suite 20
Walnut Creek, CA 94596
Tel: (925) 239-0899
Fax: (925) 801-3818
david@ratnermolineaux.com
shelley@ratnermolineaux.com

Attorneys for Plaintiff DAVID HARTWICK

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID HARTWICK, an individual,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>CITY OF SAN JOSE, a Public entity; and DOES 1 to 50, inclusive.<br><br>　　　　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Disability Discrimination in Violation of Title II of the American with Disabilities Act 1990 (ADA) [42 U.S.C. § 12101, et seq.]<br>2. Failure to Provide a Reasonable Accommodation Under the ADA [42 U.S.C. § 12111(8)-(9)]<br>3. Retaliation Under the ADA [42 U.S.C. § 12203]<br>4. Harassment Under the ADA [42 U.S.C. § 12101]<br>5. Failure to Prevent Discrimination, Retaliation and Harassment Under the ADA [42 U.S.C. §§ 12101]<br>6. Violation of Business and Professions Code §§ 17200<br><br>**DEMAND FOR JURY TRIAL** |

1.　　Plaintiff DAVID HARTWICK ("Plaintiff" or "Mr. Hartwick"), an individual, seeks equitable relief, declaratory relief and monetary damages against Defendant CITY OF SAN JOSE ("Defendant" or "the City"), a Public entity, and DOES 1 to 50 for its willful violations of American Disabilities Act and related laws.

## NATURE OF THE LAWSUIT

2. This case arises out of the City's depriving its employee, Mr. Hartwick of his rights under the Americans with Disabilities Act ("ADA"). Despite Mr. Hartwick's traumatic brain injury that substantially limits major life activities, the City has failed to provide him with reasonable disability accommodations and, on numerous occasions, failed to engage in a good faith interactive process to determine reasonable accommodations for Plaintiff's disability. Moreover, the City has compounded the problem by harassing and retaliating against Mr. Hartwick on the basis of his disability. Consequently, along with his ongoing physical disability, Mr. Hartwick now suffers from severe emotional and mental distress due to the unlawful employment practices of the City.

## JURISDICTION, VENUE AND PARTIES

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 12101, et seq., for Plaintiff's claims arising under the laws of the United States, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under the laws of the State of California and/or common law.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant, City of San Jose conducts its business in this district, and the acts and omissions giving rise to this Complaint occurred within this district.

5. Defendant City of San Jose is, and at all times herein, mentioned was a governmental entity duly organized under the laws of the State of California.

6. Plaintiff David Hartwick is an adult resident of San Jose, California.

7. Plaintiff sustained a traumatic brain injury as a result of a motor vehicle accident that occurred 1991. Mr. Hartwick's traumatic brain injury substantially limits some of his major life activities.

8. Plaintiff is an individual with a disability as defined in California Government Code Section 12926 and the Americans with Disabilities Act (hereinafter "ADA") (§ U.S.C. 12101, et seq.).

9. Plaintiff is informed and believes that Defendant Does 1-50 are associations, corporations, business entities, or are ("the employees") individuals residing in the State of California, within this judicial district. The true names or capacities, whether individual, corporate, associate or otherwise of

Defendants, DOES 1 through 50, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants are in some manner legally responsible for the events and happenings herein referred to, and legally caused injury and damages thereby to the Plaintiff as herein alleged.

10. Plaintiff is informed and believes, and on such information and belief alleges, that at all times mentioned herein, Defendants, and each of them, were the agents, servants, contractors and employees of each of the remaining Defendants, and were acting within the course and scope of said agency, service contract and employment. All actions alleged herein were done with the knowledge, consent, approval and ratification of each of the defendants herein.

11. Defendant City of Jose and Does 1 to 50, inclusive, are collectively referred to hereafter as "Defendants".

### *ADMINISTRATIVE EXHAUSTION REQUIREMENTS*

12. Pursuant to Subtitle A of the ADA, Plaintiff is not required to "exhaust administrative remedies" before bringing this lawsuit. (28 C.F.R. Part 35, § 35.172)

### *GENERAL ALLEGATIONS*

13. On or about February 2016, Defendant City of San Jose hired Plaintiff as a full-time Emergency Services Planner and Logistics Coordinator. Plaintiff is disabled.  The City paid Plaintiff approximately $1,347.60 per week ($33.69/per hour)

14. At all times relevant, the Plaintiff was employed with Defendant as an Emergency Services Planner and Logistics Coordinator.

15. In 1991, Plaintiff sustained a traumatic brain injury (TBI) in 1991 as a result of a motor vehicle accident. As a result of the TBI plaintiff spent approximately 3 ½ years learning to read, walk and speak.  In 2003, Plaintiff's arms were crushed by a metal cabinet. The arm injury required multiple surgeries and physical therapy.  Plaintiff did not recover from this crush injury until approximately 2006.

16. Plaintiff's TBI substantially limits some of his major life activities.

17. Before his employment with Defendant, Plaintiff worked for law enforcement performing special assignments. When Defendant hired Plaintiff, Defendant was aware of Plaintiff's TBI and the challenges Plaintiff experiences with this condition.  Assignments take him longer because spelling,

reading and writing require more concentration. He requires more time to write reports because of his disability.

18. San Jose Director Ryan Broughton hired Plaintiff. Before working for San Jose, Mr. Broughton worked for law enforcement, emergency services and the military.  Mr. Broughton knew of Plaintiff's disability. Broughton hired Plaintiff because of Plaintiff's work history and experience. Plaintiff and Mr. Broughton worked well together.

19. Plaintiff started with San Jose as a volunteer for four months without pay. During this time, Plaintiff setup the emergency operation center for the City.

20. Broughton then hired Plaintiff as a logistics coordinator.  Mr. Broughton created this position specifically for Plaintiff.  Broughton next promoted Plaintiff to emergency operations coordinator.

21. Mr. Broughton left his position as Director in early 2017.

22. Plaintiff was an exemplary employee with a proven ability to perform the essential functions required of an Emergency Services Planner and Logistics Coordinator.

23. In 2017, Kay Denise McKenzie, took over as interim director. Ms. McKenzie said to Plaintiff in front of another employee, Joanne Bartaldi, that she did not think Mr. Hartwick would be able to do the job because of his brain injury.

24. Ms. McKenzie made numerous condescending comments to Mr. Hartwick, i.e. "if this is too taxing on your brain, let me know".

25. Plaintiff's contract stipulated that he was not allowed to work overtime without prior authorization. At first, Defendant did not pay him for the overtime hours he worked but Mr. Hartwick fought it and Defendant eventually paid him his overtime hours.

26. On or about September 2018, the Plaintiff was terminated when his contract was not renewed.  Plaintiff was the only employee whose contract was not renewed by Defendant.

27. Upon information and belief, the Defendant's refusal to renew Plaintiff's contract was a pretext for terminating the Plaintiff because he was disabled.  Defendant did not give Plaintiff a reason for not renewing his employment contract.

28. Plaintiff endured harassment and discrimination perpetrated by several employees of the

City, including employees holding management positions, including, without limitation, Director Ray Riodan; Senior Staff Kay Denise MacKenzie; Staff Maria Murillo, Linh Ngo, Chris Swartout; Deputy City Manager of Emergency Management, Kip Harkness; and staff at OER (Office of Employee Relations - City of San Jose).

29.  Plaintiff followed the chain of command when reporting the harassment and discrimination. First, Plaintiff made a complaint to Former Director Ryan Broughton who left his position as Director and handed off his duties to Interim Director Kay Denise MacKenzie, who did not help Plaintiff - she only made things worse.

30.  Plaintiff made a complaint to the new Director Ray Riordan who did not help Plaintiff but instead things got worse.

31.  Plaintiff made a complaint to the Deputy City Manager of Emergency, Kip Harkness, who referred Plaintiff to the Office of Employee Relations (OER) and proceeded to rush Plaintiff out of his office. Subsequently, Mr. Harkness did nothing.

32.  Finally, Plaintiff made a complaint to the Office of Employee Relations (OER) who put Plaintiff through many meetings to investigate and gather facts and evidence but OER did nothing to help Plaintiff.

33.  Plaintiff endured a continuous hostile and discriminating work environment. He would be told in front of other employees that he cannot do his job due to his brain injury.

34.  Plaintiff endured nasty, snotty, condescending, demoralizing attitudes and comments from senior staff and staff.

35.  Senior staff and other employees would falsify documents with Plaintiff's name on the document showing his overtime. When Plaintiff stood up for himself, the attitude and demeanor of management and other employees made it more difficult for Plaintiff to do his job.

36.  Plaintiff's request for minor work accommodations due to his disability was denied.

37.  Plaintiff was increasingly stifled and limited from executing his job duties and then he would be asked why something was not completed.

38.  Plaintiff was the only employee required to document his overtime hours. Plaintiff worked 182 overtime hours that were taken away by Senior Staff Kay Denise MacKenzie. Based on information

and belief of Plaintiff, no other employees were asked to document their overtime hours or had their overtime hours removed.

39. Plaintiff continually endured character assassination from management and other employees.

40. As a result of Defendant and Defendant's employees harassing and discriminatory actions, Plaintiff became anxious, depressed, worried, nervous, fearful, apprehensive, had difficulty concentrating, felt physical pain, had debilitating headaches, and experienced trouble sleeping and eating.

41. Plaintiff witnessed discrimination and harassing conduct by Defendants and/or Defendants managers and supervisors that took place in Plaintiff's immediate work environment.

42. Defendants and/or Defendant's managers and supervisors maintained a culture where persons with disability were subjected to harassment and discrimination.

43. Plaintiff was subjected to derogatory remarks from Ms. McKenzie.

44. Defendants failed to take any corrective action in response to the abuse, harassment and discrimination Plaintiff endured by Defendant's managers and supervisors, as well as other employees.

45. Plaintiff witnessed harassment and discrimination of other employees who worked in Plaintiff's department.

46. Plaintiff was terminated on or about September 2018, solely because of his disability. As a result of his discriminatory termination, Plaintiff was demoralized, devasted, embarrassed, humiliated, ashamed, and his professional reputation was irreparable tarnished. He constantly worries about finances and retirement. As a result of Defendant's conduct, Plaintiff fears that due to his age and disability he will not be able to acquire a similarly lucrative position.

## FIRST CAUSE OF ACTION

*Disability Discrimination in Violation of Americans with Disabilities Act (ADA)*

*42 U.S.C. §12101, et seq.*

*(Against Defendant City of San Jose and DOES 1 to 50)*

47. Plaintiff re-alleges and incorporate by reference the allegations contained in all foregoing paragraphs as though fully set forth herein.

48. In 1990 the United States Congress found that laws were needed to more fully protect

some 43 million Americans with one or more physical or mental disabilities, that "historically, society has tended to isolate and segregate individuals with disabilities," that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;" that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals;" and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. § 12101.

49. Congress stated as its purpose in passing the Americans with Disabilities Act, 42 U.S.C. § 12101(b):

"It is the purpose of this chapter:

1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

3) to ensure that the Federal government plays a central role in enforcing the standards established in this act on behalf of individuals with disabilities; and

4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities."

50. The Americans with Disabilities Act, codified at 42 U.S.C. § 12101 et seq., makes it unlawful for an employer to discriminate against an employee on the basis of the employee's disability in regard to the "discharge of employees." *See* 42 U.S.C. § 12112(a); 29 C.F.R. §§ 1630.4, 1630.13.

51. Since 1991, Plaintiff has suffered from a traumatic brain injury from being run over by a car. Plaintiff had to learn to read, walk and speak again which took about 3-1/2 years. Plaintiff continues to suffer from this condition. At all relevant times, Plaintiff's condition substantially limited his ability to work, and thus constitutes a "physical disability" as defined in United States Code section 12102, subdivision (1)(A) and subdivision (2). At all relevant times, Defendant knew that Plaintiff had been

suffering from a traumatic brain injury. By virtue of his physical disability, Plaintiff belongs to a class protected by the ADA.

52. Plaintiff is disabled under the ADA act because he is mentally impaired due to a traumatic brain injury and needed accommodations to perform the essential functions of his job.

53. Defendant engaged in the unlawful employment practices, in violation of the ADA, by terminating Plaintiff from his position as an Emergency Services Planner and Logistics Coordinator on the basis of his disability.

54. Plaintiff is informed and believes and based thereon alleges that his disability-the substantial impairment of his traumatic brain injury-was the motivating factor in Plaintiff's decision to terminate Plaintiff's employment, and other discrimination against him, in violation of Title 42 of the United States Code, Section 12112(a).

55. Following Plaintiff's termination and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

56. Following Plaintiff's termination and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered humiliation, emotional distress, and mental pain and anguish, all to his damage in an amount according to proof at the time of trial.

57. In doing the acts herein alleged, Defendant intentionally acted with oppression, fraud, malice, and "in reckless indifference" of Plaintiff's rights and Plaintiff is, therefore, entitled to compensatory damages in an amount according to proof at the time of trial. *See* 42 U.S.C. § 1981a(b)(1).

58. Plaintiff has also incurred and continues to incur attorney's fees and legal expenses in an amount according to proof at the time of trial.

**SECOND CAUSE OF ACTION**

*Failure to Provide a Reasonable Accommodation Under the ADA*

*[42 U.S.C. § 12111(8)-(9)]*

(Against Defendant City of San Jose and DOES 1 to 50)

59. Plaintiff re-alleges and incorporate by reference the allegations contained in all foregoing paragraphs as though fully set forth herein.

60. Since 1991, Plaintiff has suffered from a traumatic brain injury from being run over by a car. Plaintiff had to learn to read, walk and speak again which took about 3-1/2 years. Plaintiff continues to suffer from this condition. At all relevant times, Plaintiff's condition substantially limited his ability to work, and thus constitutes a "physical disability" as defined in United States Code section 12102, subdivision (1)(A) and subdivision (2). At all relevant times, Defendant knew that Plaintiff had been suffering from a traumatic brain injury. By virtue of his physical disability, Plaintiff belongs to a class protected by the ADA.

61. The ADA, codified at 42 U.S.C. § 12101 et seq., makes it unlawful if an employer does not make "reasonable accommodations" available to the employee who has a known disability and who can perform the position's essential functions. *See* 42 U.S.C. §§ 12111(8), (9), 12112(a); 29 C.F.R. §§ 1630.2(o), 1630.9 & Pt. 1630, App. §§ 1630.2(o), 1630.9.

62. Defendant failed to make a reasonable accommodation available for Plaintiff's disability, notwithstanding Plaintiff's proven ability to perform the essential functions required of an Emergency Services Planner and Logistics Coordinator.

63. Following Plaintiff's termination and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

64. Following Plaintiff's termination and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered humiliation, emotional distress, and mental pain and anguish, all to his damage in an amount according to proof at the time of trial.

65. In doing the acts herein alleged, Defendant intentionally acted with oppression, fraud, malice, and "in reckless indifference" of Plaintiff's rights and Plaintiff is, therefore, entitled to compensatory damages in an amount according to proof at the time of trial. See 42 U.S.C. § 1981a(b)(1).

66. Plaintiff has also incurred and continues to incur attorney's fees and legal expenses in an amount according to proof at the time of trial.

**THIRD CAUSE OF ACTION**

*Retaliation Under the ADA*

*[42 U.S.C.§ 12203]*

*(Against Defendant City of San Jose and DOES 1 to 50)*

67. Plaintiff re-alleges and incorporate by reference the allegations contained in all foregoing paragraphs as though fully set forth herein.

68. Since 1991, Plaintiff has suffered from a traumatic brain injury from being run over by a car. Plaintiff had to learn to read, walk and speak again which took about 3-1/2 years. Plaintiff continues to suffer from this condition. At all relevant times, Plaintiff's condition substantially limited his ability to work, and thus constitutes a "physical disability" as defined in United States Code section 12102, subdivision (1)(A) and subdivision (2). At all relevant times, Defendant knew that Plaintiff had been suffering from a traumatic brain injury. By virtue of his physical disability, Plaintiff belongs to a class protected by the ADA.

69. The ADA, codified at 42 U.S.C. § 12101 et seq., makes it unlawful for an employer to take an adverse action against an employee who has engaged in any practice that the ADA protects. *See* 42 U.S.C. § 12203; 29 C.F.R. §§ 1630.8, 1630.12 & Pt. 1630, App. § 1630.8.

70. Plaintiff requested reasonable accommodations to deal with his traumatic brain injury that substantially limits major life activities, an ADA protected activity, and these accommodations were ignored or denied by Defendant.

71. Plaintiff was harassed and discriminated against by Defendant and/or Defendant's managers and supervisors. Plaintiff considered the work environment to be hostile and abusive toward persons with disabilities.

72. Plaintiff's supervisor engaged in the conduct.

73. Plaintiff complained about the hostile and abusive conduct.

74. Defendants retaliated against Plaintiff by terminating Plaintiff's employment, rather than investigating or addressing Plaintiff's complaints regarding Defendant's failure to provide reasonable accommodations.

75. Defendants retaliated against Plaintiff by terminating Plaintiff's employment, rather than investigating or addressing Plaintiff's complaints regarding the discriminating and harassing work environment.

76. As a direct and proximate result of Plaintiff's request, when Plaintiff was due to return to

after the 30 day furlough as per the contract every two years, Defendant did not bring Plaintiff back to work nor was Plaintiff given the opportunity to return to work, unlike all of the other employees who were offered their jobs back and returned to work. Plaintiff was led to be believe by the City's Director and Senior staff that his contract was being renewed and he would be coming back to work. Defendant terminated Plaintiff's employment and, Plaintiff is informed and believes and based thereon alleges that Plaintiff's request for a reasonable accommodation and his complaints regarding the harassment and discrimination, a protected activity, was a motivating factor for Defendant to terminate Plaintiff's employment.

77. Following Plaintiff's termination and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

78. Following Plaintiff's termination and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered humiliation, emotional distress, and mental pain and anguish, all to his damage in an amount according to proof at the time of trial.

79. In doing the acts herein alleged, Defendant intentionally acted with oppression, fraud, malice, and "in reckless indifference" of Plaintiff's rights and Plaintiff is, therefore, entitled to compensatory damages in an amount according to proof at the time of trial. See 42 U.S.C. § 1981a(b)(1).

80. Plaintiff has also incurred and continues to incur attorney's fees and legal expenses in an amount according to proof at the time of trial.

### FOURTH CAUSE OF ACTION

*Harassment Under the ADA*

*[42 U.S.C. § 12101]*

*(Against Defendant City of San Jose and DOES 1 to 50)*

81. Plaintiff re-alleges and incorporate by reference the allegations contained in all foregoing paragraphs as though fully set forth herein.

82. Since 1991, Plaintiff has suffered from a traumatic brain injury from being run over by a car. Plaintiff had to learn to read, walk and speak again which took about 3-1/2 years. Plaintiff continues to suffer from this condition. At all relevant times, Plaintiff's condition substantially limited his ability to

work, and thus constitutes a "physical disability" as defined in United States Code section 12102, subdivision (1)(A) and subdivision (2). At all relevant times, Defendant knew that Plaintiff had been suffering from a traumatic brain injury. By virtue of his physical disability, Plaintiff belongs to a class protected by the ADA.

83. At all relevant times, and notwithstanding his protected status, Plaintiff was subjected to unwelcome harassment by the City and several of the City's employees based on his physical disability. The harassing conduct was severe and pervasive, and affected the terms, conditions, or privileges of Plaintiff's employment. Among other things, plaintiff's repeated requests for reasonable accommodations were unreasonable denied without the City providing alternative reasonable accommodations; plaintiff was deprived of a timely, good-faith, interactive process on several occasions.

84. As a result of the foregoing harassing conduct, Plaintiff considered his work environment to be hostile or abusive, and a reasonable, physically disabled person in Plaintiffs circumstances would have considered the work environment to be hostile or abusive as well.

85. The harassing conduct was perpetrated by several employees of the City, including employees holding management positions, including, without limitation, Director Ray Riodan; Senior Staff Kay Denise MacKenzie; Staff Maria Murillo, Linh Ngo, Chris Swartout; Deputy City Manager of Emergency Management, Kip Harkness; and staff at OER (Office of Employee Relations - City of San Jose). The City knew or should have known of the harassment. Despite this, the City failed to take immediate or appropriate corrective action.

86. As a direct result of Defendant's harassment against Plaintiff based on his disability, Plaintiff has suffered, and continues to suffer, increased emotional and mental distress, which partially manifests itself in physical discomfort, anxiety, extreme depression, loss of sleep, trouble eating, difficulty with concentration, debilitating headaches, crying episodes, emotional problems and physical pain. He has also suffered, and continues to suffer, from the following harms: the substantial loss of potential earnings and other employment equal to that of his employment with Defendant; the damages to his reputation and career; the past and continuing loss of wages and employment benefits.

87. Following Plaintiff's termination and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered and continues to sustain substantial losses in earnings and other

employment benefits in an amount according to proof at the time of trial.

88. Following Plaintiff's termination and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered humiliation, emotional distress, and mental pain and anguish, all to his damage in an amount according to proof at the time of trial.

89. In doing the acts herein alleged, Defendant intentionally acted with oppression, fraud, malice, and "in reckless indifference" of Plaintiff's rights and Plaintiff is, therefore, entitled to compensatory damages in an amount according to proof at the time of trial. See 42 U.S.C. § 1981a(b)(1).

90. Plaintiff has also incurred and continues to incur attorney's fees and legal expenses in an amount according to proof at the time of trial.

### FIFTH CAUSE OF ACTION

*Failure to Prevent Discrimination, Retaliation and Harassment Under the ADA*

*[42 U.S.C. § 12101]*

*(Against Defendant City of San Jose and DOES 1 to 50)*

91. Plaintiff re-alleges and incorporate by reference the allegations contained in all foregoing paragraphs as though fully set forth herein.

92. Since 1991, Plaintiff has suffered from a traumatic brain injury from being run over by a car. Plaintiff had to learn to read, walk and speak again which took about 3-1/2 years. Plaintiff continues to suffer from this condition. At all relevant times, Plaintiff's condition substantially limited his ability to work, and thus constitutes a "physical disability" as defined in United States Code section 12102, subdivision (1)(A) and subdivision (2). At all relevant times, Defendant knew that Plaintiff had been suffering from a traumatic brain injury. By virtue of his physical disability, Plaintiff belongs to a class protected by the ADA.

93. The City has subjected Plaintiff to discrimination, harassment, and retaliation in violation of the ADA. The County has unjustifiably denied Plaintiff's repeated requests for reasonable disability accommodations without providing any alternative accommodations. On numerous occasions, the City also failed to engage in a timely, good-faith, interactive process to determine reasonable disability accommodations for Plaintiff. Additionally, after making a complaint to the City, Plaintiff was denied a proper review process regarding his allegations of discrimination, harassment, and retaliation against the

City.

94. Several employees of the City, including employees holding management positions, including, without limitation, Director Ray Riodan; Senior Staff Kay Denise MacKenzie; and Deputy City Manager of Emergency Management, Kip Harkness, made the decisions that led to or actually engaged in the conduct which constituted discrimination, retaliation, and harassment against Plaintiff. The City knew or should have known of the discrimination, retaliation, and harassment. Despite this, the City failed to take reasonable steps to prevent the discrimination, harassment, and retaliation against Plaintiff.

95. The City failed to take immediate and appropriate corrective action with respect to the harassment of Plaintiff and failed to take all reasonable steps to prevent harassment of Plaintiff from occurring.

96. The City's conduct was a substantial factor in causing Plaintiff's harm.

97. As a direct result of Defendant's failure to prevent the discrimination, retaliation and harassment against Plaintiff based on his disability, Plaintiff has suffered, and continues to suffer, increased emotional and mental distress, which partially manifests itself in physical discomfort, anxiety, extreme depression, loss of sleep, trouble eating, difficulty with concentration, debilitating headaches, crying episodes, emotional problems and physical pain. He has also suffered, and continues to suffer, from the following harms: the substantial loss of potential earnings and other employment equal to that of his employment with Defendant; the damages to his reputation and career; the past and continuing loss of wages and employment benefits.

98. Following Plaintiff's termination and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

99. Following Plaintiff's termination and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered humiliation, emotional distress, and mental pain and anguish, all to his damage in an amount according to proof at the time of trial.

100. In doing the acts herein alleged, Defendant intentionally acted with oppression, fraud, malice, and "in reckless indifference" of Plaintiff's rights and Plaintiff is, therefore, entitled to

compensatory damages in an amount according to proof at the time of trial. See 42 U.S.C. § 1981a(b)(1).

101. Plaintiff has also incurred and continues to incur attorney's fees and legal expenses in an amount according to proof at the time of trial.

### SIXTH CAUSE OF ACTION

*Violation of Business and Professions Code §§ 17200*

*(Against Defendant City of San Jose and DOES 1 to 50)*

102. Plaintiff re-alleges and incorporate by reference the allegations contained in all foregoing paragraphs as though fully set forth herein.

103. Plaintiff brings this cause of action on behalf of himself and the general public who have been injured or damaged by defendants' violations of Business and Professions Code sections 17200, et seq.

104. Defendant has committed the following unfair, unlawful, or fraudulent acts of unfair competition, in violation of Business and Professions Code sections 17200, et seq.:

(a) Unlawfully discriminating against plaintiff in violation of both the FEHA and ADA;

(b) Unlawfully failing to provide plaintiff with reasonable accommodations for his disability in violation of the FEHA;

(c) Unlawfully failing to engage in an interactive process to determine reasonable accommodations for plaintiff in violation of the FEHA;

(d) Unlawfully retaliating against plaintiff in violation of both the FEHA and ADA;

(e) Unlawfully harassing plaintiff in violation of both the FEHA and ADA; and

(f) Unlawfully failing to prevent discrimination, retaliation, and harassment against plaintiff in violation of both the FEHA and ADA.

105. As a result of such conduct, Plaintiff has suffered and continues to suffer an injury-in-fact and monetary damages, including lost wages and employment benefits.

106. Defendants' unlawful conduct is carried out as part of their business practice.

107. Plaintiff is informed and believes and thereon alleges that Defendant has engaged in unfair business practices, which include, but are not limited to, terminating employees on the basis of such employee's disability.

15
COMPLAINT FOR DAMAGES

108. There may be other unfair, unlawful, or fraudulent business practices engaged in by defendants of which plaintiff is currently unaware. Plaintiff will seek leave to amend this Complaint when he ascertains such other and further unfair, unlawful, or fraudulent business practices. Plaintiff is a victim of these unfair business practices and has suffered an injury-in-fact and has lost money or property as the result of these unfair business practices.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, and each of them, as follows:

1. Compensatory damages including emotional distress damages and lost wages, benefits and interest in a sum according to proof;
2. Interest on judgment, including prejudgment interest, at the legal rate;
4. Attorney's fees and costs; and
5. For any further legal and equitable relief, the Court deems proper.

Dated: August 24, 2020              **RATNER MOLINEAUX, LLP**

  /s/ David S. Ratner
David S. Ratner
Shelley A. Molineaux
Attorneys for Plaintiff David Hartwick